# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA

FABIAN KEITH NOTTO,

          Plaintiff,

v.

GLENN CASTRO; CHASE
COGSWELL; KEVIN FIKES; JOHN
GARCIA; KYLE KNOOP; CITY OF
SAVANNAH, GEORGIA; CHATHAM
COUNTY, GEORGIA,

          Defendants.

Civil Action File No.

4:18-CV-00076-WTM-GRS

## AMENDED COMPLAINT

1.

FABIAN KEITH NOTTO (hereinafter "Notto") complains against the CITY OF SAVANNAH, GEORGIA (hereinafter "Defendant City") and CHATHAM COUNTY, GEORGIA (hereinafter "Defendant County"), and law enforcement officers GLENN CASTRO ("Castro"), CHASE COGSWELL ("Cogswell"), KYLE KNOOP ("Knoop"), KEVIN FIKES ("Fikes"), and JOHN GARCIA ("Garcia").

2.

Notto asserts this civil rights action under 42 U.S.C. § 1983 for his malicious prosecution, without probable cause, beginning on October 8, 2013, which initiated a pattern of flagrantly unlawful police activity and an illegal prosecution, resulting in Notto's confinement in the Chatham County Jail for 30 months.

-1-

3.

Notto's illegal prosecution included the following actions:

    (a)    Fabricated justification for extended surveillance;

    (b)    Fabricated facts supporting probable cause for traffic stop;

    (c)    Fabricated basis for search, detention, arrest;

    (d)    Reporting a false confession;

    (e)    Concealment of key exculpatory evidence;

    (f)    Falsified written investigative and other reports;

    (g)    Falsified testimony;

    (h)    Failure to discipline and train officers regarding unconstitutional practices and customs; and

    (i)    Intentional failures to report the 2016 Order of Nolle Prosequi to probation agencies, resulting in the arrest of Notto on July 1, 2016.

4.

Notto is a resident of the State of Georgia and a citizen of the United States.

5.

Defendant City and Defendant County are municipal and county government entities respectively, within the State of Georgia, and the controlling and decision-making authorities, of the former Savannah Chatham County Metropolitan Police Department (SCMPD), as well as the public employers of Defendant Officers, who at all times relevant to this action were United States citizens and law enforcement officers with

SCMPD.

6.

All Defendants engaged in a pattern and practice to violate the Fourth and Fourteenth amendment rights of citizens, including Notto.  Defendants' actions together were the moving force behind Notto's unconstitutional detention and prosecution, in willful violation of 42 U.S.C. § 1983.

7.

Defendant City and Defendant County have been provided sufficient notice of Notto's claims in accordance with O.C.G.A. §§ 36-33-5 & 36-11-1. Notto has met *ante litem* notice requirements, to the extent any such requirements exist.

8.

Defendants may be served with this amended complaint through their counsel of record.

**JURISDICTION AND VENUE**

9.

This action is authorized and instituted pursuant to the Civil Rights Act, 42 USC § 1983, for violations of Notto's constitutional rights under the Fourth Amendment, which is incorporated by the Fourteenth Amendment, to be free from unreasonable searches and seizures.

10.

This Court has jurisdiction over these claims pursuant to 28 USC §§ 1331, and

-3-

1343(3) and supplemental jurisdiction pursuant to 28 USC § 1367 as it relates to Notto's state law claims. Venue lies in this District under 28 USC § 1391(b)(1)(2) because the actions, inactions, and failures of the Defendants occurred in Chatham County, Georgia.

## **FACTS**

11.

On the afternoon of October 8, 2013, Notto was subjected to clandestine surveillance by SCMPD at his residence.

12.

Defendant Cogswell initiated surveillance based on information that he knew or should have known to be false.

13.

Defendants proceeded with surveillance without probable cause.

14.

The surveillance of Notto's residence revealed no reasonable suspicion of criminal activity. Defendant Cogswell admitted at a preliminary hearing in the Notto criminal prosecution that he did not observe any suspicious activity.

15.

When Notto left his residence in his car, Defendant Cogswell initiated travelling surveillance. Cogswell observed no suspicious activity to justify his continued surveillance of Notto.

16.

Notto picked up passenger, Wesley Johnson, at his place of employment. Cogswell observed no suspicious activity.

17.

Cogswell continued to follow Notto and Johnson, even though he had observed no suspicious activity and had no arguable probable cause to believe that a crime had been or was about to be committed.

18.

Despite never observing any suspicious behavior, Defendant Cogswell contacted the SCMPD Crime Suppression Unit on his personal cell phone and asked them to engage in a vehicle follow.

19.

Defendant Castro maintained surveillance of Notto hoping that he could find a justification for a traffic stop, even though he had no reasonable suspicions that any crime had been committed.

20.

Eventually the officers executed a traffic stop of Notto's vehicle without probable cause.

21.

Defendant Castro fabricated observations of a traffic violation as pretext for the stop.

22.

Castro knowingly fabricated that he observed Notto commit a traffic violation: an Improper Lane Usage infraction. Castro later altered his initial justification claiming that Notto improperly continued straight after engaging his left turn indicator and ran a red light.

23.

Notto was subjected to an illegal detention and search, arrested, and incarcerated for 30 months, during which time, Notto was continuously subjected to prosecutorial misconduct and flagrantly unlawful police activity.

24.

Contemporaneous police radio recordings revealed that the alleged red traffic light was actually green, negating Castro's justification for the stop.

25.

Castro knew Notto had committed no traffic offense when he stopped him.

26.

Castro later falsely testified that he did not participate in the traffic stop, despite being the sole witness to the alleged traffic violation(s).

27.

At all times relevant, Notto operated his vehicle legally and committed no traffic violations. Notto and passenger Wesley Johnson were not behaving in a manner that would give rise to any reasonable suspicion of criminal activity.

28.

At a hearing on March 1, 2016 and March 24, 2016, a violation of Notto's Fourth

Amendment constitutional rights was expressly adjudicated.

29.

Notto was ultimately released by an Order of Nolle Prosequi and an Order of

Release on April 5, 2016. The Order of Nolle Prosequi was not the result of any

negotiated compromise or agreement.

30.

Notto's prosecution terminated in his favor on April 5, 2016.

31.

Judge Louisa Abbot of the Superior Court of Chatham County ordered:

I do believe the evidence presented, particularly with regard to the radio
transmissions, seriously undercuts the testimony of Castro at the original
hearing and casts doubt about whether or not there was probable cause.
That causes me to wonder whether or not this was all a pretext. That's a
very rare thing to happen. Castro was looking for probable cause.  Castro
was following Notto to get probable cause.

We all know that's what's going on. And I certainly at the time of the [first]
hearing thought that cutting off another car because of not being – of
moving over into another lane, that that was a serious problem. But it does
not appear that that's what occurred. And I don't think that Castro's
omission of that [on the Police Radio Recording] was something that was
anything other than just the fact that it didn't happen. So his credibility is in
significant doubt.

There was a witness who was there who said there was not another car
there at all. And now the Court does not believe there was another car. I
don't believe that Notto violated the law in a way that could create probable
cause to stop him. I am putting some weight on the evidence regarding the
Michon Green (phonetic) matter testified to by Detective Larry. Because it

shows a tendency on the part of Castro to either omit or even worse alter facts.

So I would grant the motion for reconsideration. I am granting the motion to suppress... That essentially I have found that Castro's testimony is not credible, and therefore the Fourth Amendment issue is going in favor of Notto.

32.

The Superior Court of Chatham County found that no probable cause existed for Notto's arrest and detention.

33.

Notto's arrest was motivated by political considerations. Defendant Officers were under internal pressure to arrest Notto in connection with another investigation of his brother Frank Notto in order to bolster a "tough-on-crime" reputation of the SCMPD.

34.

SCMPD, its officers and policy-makers, sought publicity immediately following Notto's and his brother's arrests, at a time when public pressure existed to suppress crime. SCMPD publicized that Cogswell and other officers had "dismantled" a "drug ring" involving Notto and his brother.

35.

SCMPD sensationalized Notto's arrest.

36.

One or more Defendant Officers provided false and conflicting bases for their concerns that Notto was a flight risk, which led to his prolonged detention.

37.

Defendant Officers specifically claimed difficulty in apprehending Notto as the basis for labeling him as a "flight risk."

38.

Contrary to Defendants' portrayals, Notto stopped in response to the police signal in a highly cooperative manner and did not attempt to flee.

39.

Officer Knoop initially testified that Notto reached for his keys during the traffic stop in support of the theory that he was a flight risk to justify Notto's prolonged detention awaiting trial.

40.

Officer Knoop had, in fact, ordered Notto to turn off his car, which required that he touch the keys in the ignition.

41.

Officer Fikes falsely claimed that he had to hold Notto when he exited his vehicle in an effort to portray Notto as a flight risk, even though Fikes was not at the vehicle when Notto was removed from his vehicle.

42.

Notto was detained involuntarily and without probable cause. Defendant Officers corroborated and fabricated the facts and circumstances of Notto's removal from the vehicle to raise suspicions and to mischaracterize Notto as a "flight risk."

43.

Defendant Officers planted marijuana/drug evidence near Notto to ensure that he was arrested and implicated in a "drug ring."

44.

Defendant Officers obtained marijuana from passenger Wesley Johnson and not Notto.

45.

Cogswell fabricated an alleged confession by Notto in an effort to create probable cause for Notto's continued prosecution.

46.

During Notto's prosecution, Defendants withheld and concealed from Notto exculpatory evidence as part of a pattern of their intentional misconduct.

47.

Castro was the subject of SCMPD Internal Affairs investigations during October 2013, contemporaneous to Notto's arrest.

48.

During 2010, Fikes was the subject of similar investigations.

49.

Defendants withheld information about these investigations as part of a pattern of prosecutorial misconduct.

50.

Defendants knew or should have known that Castro exhibited a pattern of falsifying facts and circumstances both in testimony and written reports, in violation of the constitutional rights of Savannah and Chatham County citizens.

51.

During 2010, Fikes was also known to exhibit similar patterns of falsification and manipulation of written reports.

52.

Castro admitted to a pattern of unlawful police activities during August 2013 and earlier including:

(a)    Discharging a suspect's evidentiary weapon in a crowd of bystanders during 2007;

(b)    Deceiving a suspect by saying that the suspect's prosecutorial fate rested in a coin toss during 2007;

(c)    Performing illegal search of suspect during 2010;

(d)    Performing illegal strip search of suspect during 2010;

(e)    Holding a gun to the head of an unarmed non-violent suspect on August 17, 2013;

(f)    Attempting to conspire with another officer to avoid reporting an extreme use of force on August 17, 2013;

(g)    Falsifying police reports; and

-11-

(h)     Fabricating facts surrounding arrests and the handling of suspects.

53.

Defendant Police Department was put on notice of improper or illegal acts by Castro in a memo dated February 27, 2014, from Major James Barnwell.

54.

Defendant Police Department was put on notice of improper or illegal acts by Castro in a memo dated April 28, 2014, from Major James Barnwell.

55.

During 2013, Castro was cited with seven SCMPD General Order violations, including four of the most serious being Use of Force general orders violations.

56.

On August 17, 2013, Castro falsified written reports in an effort to conceal a use of force against a suspect.

57.

On January 21, 2007, Castro discharged a suspect's weapon among a crowd of bystanders as a "warning shot."

58.

Upon information and belief, during May 2015, Castro was involved with another discharge of a suspect's weapon endangering a minor citizen in a police vehicle, where the weapon was accidently discharged by Castro.

59.

According to the SCMPD Internal Affairs investigation, during an interview on October 18, 2013, just 13 days after Notto's arrest, Castro exhibited the mindset of a rogue officer, willing to fabricate facts, manipulate written reports, and violate constitutional rights.

60.

Castro admitted to Internal Affairs that he knew he broke departmental policies, that his methods were "unconventional," and that his actions were wrong.

61.

Castro intentionally violated Notto's constitutional rights and Defendants knew of Castro's propensity to violate the constitution.

62.

Castro committed perjury during a hearing to suppress evidence in Notto's criminal prosecution by fabricating facts to support probable cause.

63.

Superior Court Judge Abbot determined that Castro's testimony was not credible and was likely a pretext for actual motives and actions. Judge Abbot further found: "…it shows a tendency on the part of [Castro] to either omit or even worse alter facts."

64.

At all times relevant to Notto's arrest and prosecution, Castro knowingly falsified written reports, communications, and testimony related to Notto's criminal prosecution

including but not limited to the initial incident reports and the investigative reports and other communications concerning the investigation.

65.

Castro participated in the withholding of exculpatory evidence in the form of police radio recordings and impeachment evidence related to individual Defendants, up to February 8, 2016.

66.

Upon information and belief, one or more Defendant Officers including Cogswell falsely testified and made written reports and statements against Notto at, or related to, one or more Notto's probation-violation hearings.

67.

Even after Notto's release, Defendants acted or failed to act administratively to report Notto's April 5, 2016 Order of Nolle Prosequi to probation authorities, resulting in his arrest on July 1, 2016.

68.

Notto's second arrest resulted in an additional three weeks of incarceration.

69.

Defendants withheld key exculpatory evidence until the court forced its production on February 8, 2016.

70.

Said exculpatory evidence, in the form of police radio recordings completely

-14-

exonerated Notto from the alleged crime for which he was stopped.

71.

Notto sought this exculpatory evidence on multiple occasions.

72.

SCMPD was at all times relevant responsible for the supervision and training of Defendant Officers, and held final decision-making authority regarding such matters for all employed officers.

73.

According to SCMPD General Order #ADM-004, "Final department [SCMPD] disciplinary authority and responsibility rests with the Chief of Police."

74.

SCMPD, through its Chiefs of Police and final policy makers, failed to provide adequate supervision and training in a reckless disregard for Notto's constitutional rights by failing to safeguard against falsified police reports, Fourth Amendment violations and failure to train and discipline officers, such as Castro.

75.

SCMPD fostered and enabled officers who violated constitutional rights by failing to punish, terminate or otherwise adequately remediate such constitutional violations, where even local media and the general public outcry had already recognized the pattern of constitutional violations.

76.

Defendant SCMPD was on explicit notice by way of a well-publicized independent review ("2013 External Review") prepared for Defendant City on December 2, 2013 by consulting firm Alexandria, Virginia-based Manuel, Daniels, Burke International.

77.

The 2013 External Review, which was ordered on October 4, 2013, a mere 4 days prior to the initiation of the prosecutorial misconduct against Notto, clearly states that the SCMPD disciplinary systems are inadequate – the identified inadequacies and the failure to remedy the deficiencies were the moving force behind the violation of against Notto's 4th amendment rights.

78.

The 2013 External Review indicates that the Chief of SCMPD was provided multiple updates during the various underlying 2010 investigations putting SCMPD, the City and/or the County on notice of the unconstitutional behavior and a pattern of abuses by SCMPD officers well in advance of Notto's unconstitutional prosecution.

79.

The City acknowledged SCMPD deficiencies when it ordered the 2013 External review, and was aware of SCMPD's deficiencies prior to that time.

80.

The City and/or the County was on notice of these deficiencies from various

sources including but not limited to:

>   (a) Media coverage including Savannah Morning News, December 28, 2013 says "[Defendant Chief] ignored available evidence" and "withheld vital information";
>
>   (b) Meeting on September 10, 2010 with federal investigators and local U.S. Attorney's Office, where Defendant Chief was briefed regarding corruption;
>
>   (c) Letter on May 7, 2013 from Defendant DA to Defendant Chief, which outlines witness reliability issue; and
>
>   (d) In an open letter written by a resigning officer, Frank Reteguiz, he informed Defendants that "corruption" was an ongoing problem within SCMPD, including the department's failure to discipline problem officers.

81.

The SCMPD was called to a meeting on September 10, 2010 with federal investigators and then-U.S. Attorney Ed Tarver. The meeting was in response to the reinstatement of a formerly suspended officer. The suspended-and-reinstated officer was the subject of investigations by the federal agencies due to numerous constitutional violations.

82.

The purpose of the meeting was to question the Chief's decision to reinstate rogue police officers and put citizenry rights at risk. This meeting was intended to put the Chief on notice of his wrongful action – the SCMPD was put on explicit notice of the activities complained of herein, which was a pattern of constitutional violations by SCMPD

-17-

officers.

83.

Five months before Notto's unconstitutional arrest, then police Chief Willie Lovett

was notified in a May 7, 2013 letter from District Attorney Meg Heap that U.S. Attorney

Edward Tarver would no longer prosecute cases involving corrupt SCMPD officers.

84.

The letter advised that "after discussions with the State's Prosecuting Attorneys

Council, I am in agreement with the U.S. Attorney. My office will not prosecute any

cases where the above-named officers have any substantive involvement."

85.

The DA also cited the credibility issue and requirement that the DA

inform criminal defendants and their attorneys of the issues. This communication

regarding a specific investigation is part of the explicit various notices to the SCMPD of

a pattern of ongoing constitutional violations by SCMPD officers.

86.

The SCMPD Chief took inadequate remedial measures against Castro for his past

unconstitutional acts – as a pattern, the Chief took no or inadequate remedial measures

against Defendant Officers and other SCMPD officers. Defendant Chief allowed

Defendant Castro to continue to be employed by the SCMPD despite his substandard

performance and earlier unconstitutional conduct and department policy violations. The

permissive atmosphere with regards to constitutional violations further emboldened

Defendant Castro and Defendant Officers and other SCMPD officers.

87.

The Police Chief knew of various SCMPD officers' propensity for unconstitutional and illegal behavior. The Police Chief failed to take sufficient remedial action, which established an environment and a custom and practice, where officers with a propensity to violate the constitutional rights of citizens like Plaintiff were emboldened to continue such violations.

88.

Defendants' liability is further supported by its or the Chief's failure to appropriate oversight and to maintain processes and procedures to monitor and prevent unconstitutional arrests.

89.

The 2013 External Review also indicated that the SCMPD disciplinary system was wholly deficient and that an effective system "is something the SCMPD must immediately implement…"

90.

The 2013 External Review clearly indicates that former Police Chief, Willie Lovett, had a past practice of ignoring Internal Affairs investigations. Even where the subject officers of said investigations are clearly guilty of constitutional violations, even during an active investigation, final policy-makers failed to act to remediate the constitutional violations.

91.

The Police Chief engaged in a pattern of discouraging witnesses and investigators from participation in the investigation of officers for wrongdoing by retaliating against whistle-blowers. The 2013 External Report indicates that former Chief Willie Lovett transferred perceived whistle-blowers out of their assigned units in a form of retaliation by way of what is characterized by the 2013 External Report as an "unusual special order."

92.

As part of the Findings, the 2013 External Review concluded that the Chief provided *"false and incorrect information"* in an effort to protect officers, who were the subject of a 2010 Internal Affairs investigation in order to protect them from discipline.

93.

The 2013 External Review further concludes: "Whether through conscious indifference or over interference, [former] Chief Lovett failed to provide leadership, oversight and management at the SCMPD."

94.

Before and during Notto's unlawful surveillance, arrest, and prosecution, Defendant Castro was under investigation for and was shown to have violated well-established constitutional rights of citizens.

95.

As a result of Defendants' inactions and failures to implement policies that are

obviously necessary to protect citizenry against rogue officers like Castro – the Police Chief established and continued a custom and practice that resulted in constitutional violations.

96.

At all times relevant, Castro was inadequately disciplined and trained.

97.

Prior to and during the unlawful police activity and prosecutorial misconduct against Notto, Defendant Castro made his admissions of prior unconstitutional acts on October 17, 2013, just 9 days after the initiation of the malicious prosecution against Notto.

98.

As a result of Defendants' inactions and failures to implement adequate training that was obviously necessary to protect citizenry against rogue Defendant Castro, in the face of knowledge of prior unconstitutional acts and departmental violations, Defendants allowed more constitutional violations by Castro.

99.

Defendants performed all of the complained-of acts intentionally, knowingly, willfully, wantonly, maliciously and/or recklessly in disregard for Notto's federally-protected rights.

100.

With deliberate indifference to the rights of citizens to be free from investigative

and prosecutorial misconduct by police and prosecutors, Defendants have encouraged, tolerated, ratified, and acquiesced to an environment where violations of constitutional rights are tolerated by failing to conduct sufficient training or supervision with respect to constitutional limitations on police powers; by failing to adequately punish constitutional violations; by tolerating the use of unconstitutional methods; and, by tolerating, encouraging, and permitting false statements by officers.

101.

It is the longstanding widespread deliberately indifferent custom, habit, practice and/or policy of the Defendants to permit officers to commit constitutional violations and to train officers and prosecutors in the appropriate constitutional requirements including probable cause and exculpatory evidence issues, knowing that these members of law enforcement and prosecutors therefore pose a significant constitutional risk to the public.

102.

As a direct and proximate result of the wrongful conduct of each of the Defendants,  Notto has been substantially injured. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries, great pain and emotional distress, and/or aggravation of pre-existing conditions, economic and income losses, and ongoing special damages for medically/psychologically related impairments caused by the unconstitutional and moving forces concerted conduct of the Defendants.

**CLAIMS FOR RELIEF**

**COUNT I**

**42 U.S.C. § 1983 – Unreasonable Seizure through Malicious Prosecution
in Violation of Fourth and Fourteenth Amendments**

103.

At the time of the complained of events, Notto had a clearly established constitutional right under the Fourth and Fourteenth Amendments to bodily integrity, and to be free from unreasonable search and seizure through false imprisonment and malicious prosecution by law enforcement.

104.

Any reasonable police officer, including Defendants Castro, Cogswell, Fikes, Garcia, and Koop, knew or should have known of these rights at the time of the complained of conduct, as they were clearly established at that time, including prohibitions against surveilling, detaining and prosecuting citizens without probable cause.

105.

These Defendants nevertheless subjected Notto to the deprivations of his constitutional rights to freedom and due process, which was objectively unreasonable in light of the facts and circumstances confronting them.

106.

As a direct and proximate result of these Defendants' unlawful conduct, Notto has suffered deprivation of his constitutional and statutory rights, as well as actual physical

and emotional injuries and other damages and losses as described herein, entitling him to compensatory and special damages, for which these Defendants are liable in amounts to be determined at trial.

## COUNT II

**42 U.S.C. § 1983 – Negligent Hiring, Training, Supervision, and Retention in Violation of Fourth and Fourteenth Amendments**
(*Against City of Savannah and Chatham County*)

107.

SCMPD's Chiefs of Police exercised their final decision making and policy-making authority on behalf of the City of Savannah and Chatham County to establish policies regarding hiring, training, supervision, and retention of SCMPD police officers, including Defendants Castro, Cogswell, Fikes, Garcia, and Koop.

108.

Notto had the following clearly established rights at the time of the complained of conduct, the Fourteenth Amendment right to bodily integrity, and to be secure in his person from unreasonable seizure through false arrest, imprisonment and prosecution.

109.

Defendants knew or should have known of these rights at the time of the complained of conduct, as they were clearly established at that time.

110.

In light of the duties and responsibilities of police officers who participate in arrests and preparation of police reports regarding alleged crimes, the need for

specialized hiring, training, supervision, and retention is so obvious, and any inadequacy of the same is so likely to result in a violation of constitutional and statutory rights, that the failure to adequately train, hire, retain, and/or supervise constitutes deliberate indifference to those rights.

111.

Defendants knew or should have known of the particular tendency of SCMPD officers to commit unlawful seizures and due process violations through false arrest, imprisonment, and prosecution without probable cause.

112.

Defendants nevertheless failed to establish policies to protect, or prevent from violating, Notto's rights through adequate hiring, training, supervision, and retention of police officers.

113.

Defendants' failure to supervise and train subjected Notto to a deprivation of his rights as secured by the Fourth Amendment.

114.

As a direct and proximate result of Defendants' acts and omissions, Notto suffered a deprivation of his constitutional and statutory rights, as well as actual physical and emotional injuries, and other damages and losses as described herein, entitling him to compensatory and special damages in amounts to be determined at trial.

115.

Supervisory Failures were the actual and proximate causes of Notto's physical and emotional injuries, that have been and will be suffered and other damages and losses including liberty and reputation, entitling him to compensatory, special and exemplary damages, in amounts to be determined at trial.

116.

Notto is entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988.

## COUNT III

**Georgia Law – False Imprisonment and Malicious Prosecution**
(*Against Defendants Castro, Cogswell, Fikes, Garcia, and Koop, individually*)

117.

These Defendants were under a legal duty not to falsely imprison or to maliciously prosecute persons by conducting their affairs with sufficient caution, care, and prudence and with an absence of legal malice.

118.

These Defendants breached these legal duties when they unlawfully deprived Notto of his liberty by intentionally and maliciously detaining and prosecuting him, knowing they were without probable cause, consent, or any other legal basis to do so.

119.

These Defendants also owed Notto a duty of reasonable care to ensure their

actions and inactions did not cause him to be falsely imprisoned or prosecuted.

120.

These Defendants breached that duty, in that they acted negligently, recklessly, and without authority of law in failing to properly investigate the facts known to them, and in disregarding facts known to them which demonstrated Notto had not even arguably violated any law.

121.

But for these Defendants' negligent or reckless failure to review, evidence exculpating Notto's conduct, Notto would not have been detained, charged and prosecuted for committing crimes.

122.

As a direct and proximate result of the false imprisonment and malicious prosecution committed by these Defendants, Notto has suffered injuries and damages for which these Defendants are liable in an amount to be determined at trial.

123.

Notto respectfully demands a jury trial pursuant to Federal Rules of Civil Procedure, Rule 38 (b).

**WHEREFORE**, Plaintiff prays of this Court to issue an order for judgment and damages against the Defendants, joint and severally, as follows:

(a)     A declaratory judgment that the policies, practices, acts, and omissions

complained of herein violated the Plaintiff's rights;

(b)    Retention of jurisdiction over Defendants until such time that the Court is satisfied that Defendants' unlawful policies, practices, acts, and omissions complained of here no longer exist and will not occur; Injunctive Relief related to Defendant Castro and other Defendants;

(c)    Compensatory damages in a total amount to be shown at trial for past and future economic and non-economic losses, including extreme emotional distress and mental anguish, impairment of the quality of life, damage to reputation, degradation of health, other pain and suffering allowed by law, and consequential losses, to be determined at trial;

(d)    Punitive damages against individual defendants in an amount determined by the enlightened conscience of the jury;

(e)    Attorney's Fees and cost of litigation pursuant to 42 U.S.C. § 1988 and O.C.G.A. § 51-7-47;

(f)    Pre-judgment interest and post-judgment interest;

(g)    Such other relief as sought herein and that this Court deems just and appropriate.

   /s/  M. Travis Foust    
M. Travis Foust
Georgia Bar No. 104996
tfoust@pcwlawfirm.com
Andrew Y. Coffman
Georgia Bar No. 173115
acoffman@pcwlawfirm.com

PARKS CHESIN & WALBERT, PC
75 14th Street, 26th Floor
Atlanta, GA 30309

T:  (404) 873-8000
F:  (404) 873-8050


127 Abercorn Street, Suite 306
Savannah, Georgia 31401                    Mark H. Adelman
T:  (770) 364-7237                         Georgia Bar No. 004789
                                           markhadelman@mac.com


*Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

This 22nd day of October, 2018.


   */s/   M. Travis Foust*

M. Travis Foust
Georgia Bar No. 104996